IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FREDERICK P. SCHNEIDER,

                        Plaintiff,

  v.
                                                                      OPINION & ORDER

TOWN OF CAMPBELL, ANDREW J. GAVRILOS,
ADAM BREIDEL, MICHAEL VALENCIA,               16-cv-208-jdp
COUNTY OF LA CROSSE, and
JORDAN SCHALLER,

                        Defendants.

---

      Plaintiff Frederick P. Schneider displayed signs and U.S. flags on a pedestrian overpass in Campbell, Wisconsin, in violation of a Town of Campbell ordinance restricting such activities, in part to provoke enforcement of the ordinance so that he could challenge its constitutionality. Local law enforcement officers obliged, and eventually Town of Campbell Police Chief Andrew J. Gavrilos escorted Schneider off the overpass and to the police station for violating the ordinance. Schneider now alleges that Gavrilos and other law enforcement officers unlawfully arrested him and violated his free speech and assembly rights. Schneider sues the Town of Campbell, Gavrilos, and Adam Breidel (the Town defendants) and the County of La Crosse, Michael Valencia, and Jordan Schaller (the County defendants) for their roles in enforcing the ordinance.

      The parties have filed cross-motions for summary judgment. Dkt. 52. Many of Schneider's claims are simply not viable and cannot survive summary judgment. But the main event—his constitutional challenge to the ordinance itself—will have to wait. Schneider is not the first to challenge the Town of Campbell ordinance under the First Amendment: this very issue is currently before the United States Court of Appeals for the Seventh Circuit.

*See Luce v. Town of Campbell*, No. 15-2627 (7th Cir. filed July 31, 2015). The court will defer its decision on the constitutionality of the ordinance and a few related claims, and it will stay this case pending the Seventh Circuit's ruling.

UNDISPUTED FACTS

The parties have put together a factual record of dubious quality. Neither Schneider nor the Town defendants complied with the court's procedures governing motions for summary judgment. *See* Dkt. 42. The procedures "require careful preparation of statements of proposed findings of fact" that "clearly identify the essential facts material to the motion for summary judgment." *Id.* at 7. The parties must adduce admissible evidence to support each proposed fact, and they must prepare and file their proposed findings of fact in a separate document.

Here, Schneider did not file his proposed findings of fact in a separate document, and, worse, he did not adduce and cite admissible evidence to support each proposed fact. Schneider moved for summary judgment without adducing *any* admissible evidence. The court allowed him the opportunity to "make a case for supplementing the [factual] record" in response to defendants' submissions, Dkt. 66, and Schneider *did* file a number of documents with his reply briefs. But he did not "make a case" for their inclusion in the record, and many of the documents are not admissible. The Town defendants have not adduced admissible evidence to support their submissions, either. None of the affidavits that the Town defendants have filed complies with 28 U.S.C. § 1746. Dkts. 75-78.

That said, the supported, undisputed facts generally tell the following story.

2

On October 8, 2013, the Town of Campbell Board voted to adopt Ordinance 9.12, titled "Traffic Safety Sign Control Ordinance," which provides, in relevant part:

> No person shall display, place, erect, post, maintain, install, affix, or carry any sign, flags, banners, pennants, streamers, balloons or any other similar item:
>
> (1) on any portion of a vehicular or pedestrian bridge or overpass that passes over a freeway or expressway as defined in Wis. Stat. § 346.57, or a controlled access highway as defined in Wis. Stat. § 990.01, when such highway has a speed limit of more than 40 miles per hour, whether the highway is under the jurisdiction of the federal, state or local government, provided that such sign is visible from such freeway, expressway or controlled access highway. . . . or:
>
> (2) within one hundred (100) feet of any portion of a vehicular or pedestrian bridge or overpass that passes over a freeway or expressway as defined in Wis. Stat. § 346.57, or a controlled access highway as defined in Wis. Stat. § 990.01, when such highway has a speed limit of more than 40 miles per hour, whether the highway is under the jurisdiction of the federal, state or local government, provided that such sign is visible from such freeway, expressway or controlled access highway.

Dkt. 51-2. The bottom line, for purposes of this case, is that the ordinance prohibits putting a banner on an overpass that crosses a highway with a speed limit of more than 40 miles per hour.

Schneider is affiliated with "Overpasses for America," a group that protests and demonstrates by displaying signs, banners, and flags on highway overpasses. On October 24, 2015, Schneider displayed signs and U.S. flags on the Bainbridge Street pedestrian overpass in Campbell, Wisconsin, at least in part to protest Ordinance 9.12. The overpass crosses I-90, near exit and entrance ramps.

Around 12:30 p.m., La Crosse County Sheriff's Department Sergeant Michael Valencia responded to complaints that someone was dropping things from the overpass,

causing a car on the highway to swerve. Valencia went to the overpass to perform a "hazard check." When he arrived, Valencia spoke with Schneider, who denied dropping anything from the overpass. Valencia then told Schneider that he had spoken with "the chief"—Town of Campbell Police Chief Andrew J. Gavrilos—and that Gavrilos intended to enforce Ordinance 9.12 and ask Schneider and his associates to leave the overpass. Valencia emphasized that his concern was safety, and that "[Gavrilos's] issue is his issue." Schneider began discussing his First Amendment rights, and he asked Valencia to protect his rights and arrest Gavrilos if he attempted to enforce the ordinance. Valencia reiterated that the ordinance is a Town of Campbell ordinance and is not his concern. Then Valencia left.

Gavrilos arrived a short time later, with Town of Campbell Police Officer Adam Breidel. Gavrilos identified himself as the police chief and asked Schneider if he was aware that he was in violation of a town ordinance, to which Schneider replied, "kind of." Gavrilos told Schneider that he and the others needed to leave the overpass. Schneider protested, arguing that he had a First Amendment right to be there. After some discussion about whether the ordinance was constitutional, Gavrilos placed his hand on Schneider and began leading him off the overpass, to issue him a citation. Gavrilos told Schneider that he was in his custody and escorted him off the overpass and to the police station, a five-minute walk away.

As they arrived at the station, Schneider complained about his "bad hip" and needed to pause for a moment. Gavrilos stopped and allowed Schneider to rest. Then they proceeded inside. Gavrilos allowed one of the demonstration participants to accompany Schneider. Gavrilos interviewed Schneider, after which Schneider left. He did not receive a citation; he was not charged with a crime.

4

Breidel was with Gavrilos on the overpass, providing backup. He did not object to Gavrilos's decision to escort Schneider to the police station.

Schneider summarily states that Jordan Schaller, an officer with the La Crosse County Sheriff's Department, also "participated in the detention." Dkt. 53, at 7. Schaller's report indicates that he arrived at the Town of Campbell police station after Gavrilos was already in the process of interviewing Schneider; he stayed at the station for 10 minutes and then cleared the scene. Dkt. 71-2.

It is undisputed that the posted speed limit on I-90 beneath the Bainbridge Street pedestrian overpass on October 24, 2015, was 55 miles per hour. Dkt. 72-2. Schneider concedes as much. Dkt. 82, at 3-4. But it does not appear that any of the law enforcement officers involved confirmed the posted speed limit before arresting Schneider.

The court has subject matter jurisdiction over most of Schneider's claims pursuant to 28 U.S.C. § 1331, because they arise under federal law. The court may exercise supplemental jurisdiction over Schneider's remaining state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Schneider's federal claims that they form part of the same case or controversy.

## ANALYSIS

The court will defer its ruling on the constitutionality of the ordinance, as that issue is ripe for a ruling by the United States Court of Appeals for the Seventh Circuit. But, in the meantime, the court will grant summary judgment in favor of defendants on Schneider's other claims.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

A. **Federal claims**

   1. **First Amendment**

First and foremost, this case is about whether Ordinance 9.12 violates the First Amendment. This court answered this exact question in *Luce v. Town of Campbell*, 113 F. Supp. 3d 1002 (W.D. Wis. 2015), in June 2015. Now the issue is before the United States Court of Appeals for the Seventh Circuit: a panel heard argument in January 2016, and a decision should be released before long. *Luce v. Town of Campbell*, No. 15-2627 (7th Cir. filed

6

July 31, 2015). This case and the *Luce* case involve nearly identical facts and an identical legal question: whether Ordinance 9.12 is a constitutional time, place, and manner restriction. There is nothing to be gained by deciding this issue once again—on a record of dubious quality—at the district court level. The parties here have not developed a particularly unique or robust factual record: the Town defendants attempt to incorporate portions of the *Luce* record to explain the history of and rationale for the ordinance. There is no reason for the court to revisit the *Luce* record or to redo those decisions when the *Luce* decision is already under review at the Seventh Circuit. The court will deny the parties' motions for summary judgment on this issue without prejudice and defer its decision on this issue until after the Seventh Circuit has spoken.

### 2. Fourth Amendment

Second, Schneider brings a Fourth Amendment unlawful arrest claim against the law enforcement officers. Schneider offers two alternative theories of how the officers did not have probable cause for the arrest: either the ordinance is unconstitutional, or the officers did not confirm that the speed limit directly beneath the overpass was more than 40 miles per hour.

"Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). A police officer has probable cause to arrest an individual if, at the time of the arrest, a reasonable person in the officer's position would believe that the individual has committed, is committing, or is about to commit an offense. *Id.* at 686.

The court will start with Schneider's second theory, deferring the first theory to the qualified immunity section below. According to Schneider, law enforcement did not have

probable cause to arrest him because they did not confirm the I-90 speed limit that day. Schneider concedes that his activities on the overpass that day fell within the ordinance's prohibited conduct and that law enforcement had probable cause to believe as much. But Schneider violated the ordinance only if the stretch of I-90 below the overpass had "a speed limit of more than 40 miles per hour" on October 24, 2015. Dkt. 51-2. Schneider apparently concedes that the posted speed limit on I-90 that day was actually 55 miles per hour; he has not adduced any evidence that the speed limit was anything other than 55 miles per hour that day. Instead, he contends that Gavrilos did not *confirm* the speed limit before arresting him. But probable cause does not require *certainty*. *See United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). The fact that I-90 is an interstate highway was sufficient to give law enforcement probable cause to believe that the posted speed limit was more than 40 miles per hour and that, given Schneider's activities on the overpass, he was violating Ordinance 9.12.[1]

### 3. Fifth Amendment

Schneider's operative complaint and his summary judgment briefs cite Fifth Amendment "liberty" violations, but the claim is undeveloped. Schneider argues only that "[r]estricting the liberty of Schneider with arrest and confinement violated his rights to personal physical liberty under the Fifth Amendment." Dkt. 53, at 15-16. Schneider has not adequately pleaded—much less adduced evidence to support—a Fifth Amendment claim

---

[1] Schneider discusses two additional unlawful arrest theories for the first time in his reply briefs: that (1) Gavrilos was not in uniform and not on duty when he arrested Schneider, and, as a result, the arrest was unlawful and in violation of the Town of Campbell Police Department's manual; and (2) Gavrilos did not *Mirandize* Schneider. These arguments are of dubious merit, but the court need not consider them at all. Arguments raised for the first time in a reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011).

separate from his Fourth Amendment unlawful arrest claim. The court will grant summary judgment in favor of defendants on this claim.

### 4. Fourteenth Amendment due process

Schneider has not developed a Fourteenth Amendment due process claim. The court will grant summary judgment in favor of defendants on this claim.

### 5. Fourteenth Amendment equal protection

The Fourteenth Amendment's equal protection clause "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). To state a Fourteenth Amendment equal protection claim, Schneider must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

Here, Schneider appears to allege that law enforcement have not enforced the ordinance against a Days Inn sign near the overpass, which somehow amounts to an equal protection violation. But there are three problems with this argument. First, the Days Inn sign is not within 100 feet of the overpass, *Luce*, 113 F. Supp. 3d at 1006; it does not fall within the purview of the ordinance. Second, Schneider has not alleged any facts or adduced any evidence that suggest that defendants have treated Schneider differently than similarly situated individuals. And third, Schneider appears to have abandoned his equal protection claim in his reply briefs. Schneider's equal protection claim fails as a matter of law, and the court will grant summary judgment in favor of defendants.

### 6. Conspiracy and failure to protect

Next, Schneider contends that the individual defendants—Gavrilos, Breidel, Valencia, and Schaller—conspired to violate his constitutional rights and that Breidel, Valencia, and Schaller failed to protect Schneider from Gavrilos; they "stood aside while the Town police violated Schneider's rights." Dkt. 82, at 2. Schneider brings his conspiracy claims pursuant to 42 U.S.C. §§ 1985(3) and 1986.

"To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). "Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law . . . but the conspiracy must be motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Section "1985(3) does not reach nonracial political conspiracies." *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985) (footnote omitted).

Even assuming that Schneider can prove that he suffered "a deprivation of a right or privilege granted to U.S. citizens," Schneider's conspiracy claims still fail. Schneider has not adduced any concrete evidence of an agreement among the individual defendants sufficient to demonstrate the existence of a conspiracy. What's more, Schneider has not alleged any facts, much less adduced any evidence, that demonstrate that defendants were motivated by racial or class-based discriminatory animus. The court will grant summary judgment in favor of defendants on Schneider's § 1985(3) conspiracy claim. And because Schneider failed to adduce evidence sufficient to stave off summary judgment on his § 1985(3) conspiracy claim,

his § 1986 failure to protect claim necessarily fails, too. *Smith*, 550 F.3d at 617 ("And because Smith has failed to state a § 1985 claim, his § 1986 claim fails as well."); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) ("Section 1986 liability is derivative of Section 1985 liability, so that the dismissal of the Section 1985(3) claim requires dismissal of the Section 1986 claim." (internal citation omitted)).

Schneider does not have any remaining, viable claims against Breidel, Valencia, or Schaller; their involvement in the underlying events was strictly limited to allowing or potentially endorsing Gavrilos's actions. None of these three individuals is liable for any potential constitutional violations. "[T]o be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations and internal quotation marks omitted).

### 7. *Monell* claim against La Crosse County

Schneider vaguely alludes to a potential *Monell* claim against La Crosse County. As discussed, the court will defer its decision on whether enforcement of the ordinance violated Schneider's First Amendment rights. But even if enforcement of the ordinance *did* violate Schneider's rights, the County was not responsible.

The County is liable only if what happened to Schneider can be somehow traced back to County action. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Under *Monell*, a municipality is responsible for the actions of its employees if and only if the violation was "caused by: (1) an official policy adopted and promulgated by [the City's] officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Not only has Schneider failed to adduce evidence sufficient to allow a reasonable jury to find that the County defendants (Valencia and Schaller) violated his constitutional rights, but Schneider has not identified a County policy, well-settled and widespread practice or custom, or official decision that may have been at play during Schneider's arrest. Rather, Schneider half-heartedly argues that he had the "impression that there was a policy and practice in effect that the overpass protesters' civil rights were not to be protected." Dkt. 82, at 3. This is not enough.

The record demonstrates that the only policy at play was the Town ordinance. And Schneider has not adduced any evidence that the County or its officers enforced the ordinance. "[W]hether or not a plaintiff has stated a Section 1983 claim against a municipal entity typically hinges on the extent to which that municipal entity was independently responsible for the allegedly unconstitutional act." *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014). Because no reasonable jury could find that the County was independently responsible for enforcing the ordinance against Schneider, the court will grant summary judgment in favor of the County on Schneider's *Monell* claim.

8. **Qualified immunity**

To recap, only three of the federal constitutional claims (brought pursuant to 42 U.S.C. § 1983) are still alive at this point in the analysis: Schneider's First Amendment claim against the Town arising from its allegedly unconstitutional ordinance; First Amendment claim against Gavrilos arising from his enforcement of the allegedly unconstitutional ordinance; and Fourth Amendment claim against Gavrilos arising from his allegedly unlawful arrest of Schneider. But even if the ordinance is unconstitutional and Gavrilos violated

Schneider's First and Fourth Amendment rights, Gavrilos is nevertheless entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put a bit more bluntly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The doctrine translates into a two-part test: (1) whether the public official violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). For the purposes of the qualified immunity analysis, the court will assume that Gavrilos violated Schneider's First and Fourth Amendment rights, and the court will skip to step two as authorized by the Supreme Court.[2]

A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted). Schneider bears the burden of

---

[2] The court does not have to determine whether Gavrilos violated Schneider's constitutional rights before considering whether the rights at issue were clearly established. *Pearson*, 555 U.S. at 236. In fact,"[c]ourts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *al-Kidd*, 563 U.S. at 735 (internal citation and quotation marks omitted). In this case, as explained, it makes sense to wait for the Seventh Circuit's ruling in *Luce* before deciding whether Gavrilos violated Schneider's constitutional rights.

demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

Generally speaking, an officer is entitled to enforce a duly enacted law without independently evaluating its constitutionality. "The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). The Seventh Circuit has applied the *DeFillippo* holding in the qualified immunity context. *See Doe v. Heck*, 327 F.3d 492, 515-16 (7th Cir. 2003) (holding that although the statute authorizing child welfare caseworkers to find, seize, and interview suspected abused children without a warrant and without a parent's consent was unconstitutional, the caseworkers were entitled to qualified immunity from the Fourth Amendment violation because they acted pursuant to a lawful statute; the statute was not "so patently unconstitutional as to deny the defendants qualified immunity"). Ordinance 9.12 is not so patently unconstitutional that it would be obvious to Gavrilos that it would be illegal to enforce it. Moreover, this court had already upheld Ordinance 9.12 at the time Gavrilos enforced it; he did not have to guess whether it was constitutional.

Schneider has not shown that his right to be free from enforcement of the ordinance was clearly established. Gavrilos is entitled to qualified immunity with respect to Schneider's First Amendment claim and Fourth Amendment unlawful arrest claim premised on the unconstitutionality of the ordinance.

### 9. The Americans with Disabilities Act and the Rehabilitation Act

Schneider's remaining federal claims arise under Title II of the Americans with Disabilities Act and § 504 the Rehabilitation Act. "To establish a violation of Title II of the ADA, 'the plaintiff must prove that he is a "qualified individual with a disability," that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of' his disability."'" *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir.), *cert. denied*, 136 S. Ct. 321 (2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting, in turn, 42 U.S.C. § 12132)). Section 504 of the RA "is functionally identical: it requires the plaintiff to allege that '(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability.'" *Id.* (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). The bottom line is that both the ADA and the RA are designed to ensure that public entities provide services, programs, and activities to qualified individuals with a disability.

Schneider alleges that he is a qualified individual with a disability: he has diabetes, and it affects his mobility. Dkt. 51, ¶ 4. Schneider contends that when Gavrilos arrested him and walked him to the police station, Gavrilos violated the ADA and the RA. But Schneider's contentions do not fit the ADA and the RA. Setting aside the "qualified individual" element, Schneider has not alleged that the Town denied him any services, programs, or activities because he is disabled. Schneider has not adequately developed an ADA claim or an RA claim, and the court will grant summary judgment in favor of defendants.

B. **State law claims**

1. **Wisconsin Constitution**

Schneider alleges violations of Article I, §§ 3, 4, and 11 of the Wisconsin Constitution that mirror his federal constitutional claims.[3] Sections 3 and 4 mirror the First Amendment and govern free speech and the right to peaceably assemble. Section 11 mirrors the Fourth Amendment and governs searches and seizures.

"Generally, [the Wisconsin Supreme Court has] interpreted provisions of the Wisconsin Constitution consistent with the United States Supreme Court's interpretation of their counterparts in the federal constitution." *State v. Arias*, 2008 WI 84, ¶ 19, 311 Wis. 2d 358, 752 N.W.2d 748. As far as the court can tell from the parties' submissions here, each of the sections of the Wisconsin Constitution that Schneider cites affords the same protections as its federal counterpart. *County of Kenosha v. C & S Mgmt., Inc.*, 223 Wis. 2d 373, 588 N.W.2d 236, 244 (1999) ("Despite the differences in their language, we have heretofore found no differences in the freedom of speech guarantees provided by the First Amendment and Article I, § 3. Wisconsin courts consistently have held that Article I, § 3 of the Wisconsin Constitution guarantees the same freedom of speech rights as the First Amendment of the United States Constitution."); *State v. Felix*, 2012 WI 36, ¶ 36, 339 Wis. 2d 670, 811 N.W.2d 775, and *Arias*, 2008 WI 84, ¶¶ 20-21 (noting that the Wisconsin Supreme Court has historically followed the U.S. Supreme Court's Fourth Amendment jurisprudence when interpreting Article I, § 11 of the Wisconsin Constitution).

---

[3] Schneider also cites §§ 1, 9, and 18 in his third amended complaint, but he appears to have abandoned those claims at summary judgment.

Schneider does not argue or offer any case law that suggests that Wisconsin's protections extend further than the U.S. Constitution's. Accordingly, the court will defer its decision on Schneider's claims under Article I, §§ 3 and 4 of the Wisconsin Constitution and will address these issues when it takes up his First Amendment claim. But, following the court's analysis of Schneider's federal Fourth Amendment claim, his § 11 claim necessarily fails. He cannot demonstrate that Gavrilos did not have probable cause to arrest him: Gavrilos had probable cause to believe that Schneider was violating Ordinance 9.12, a lawful, enforceable ordinance at that time. *See DeFillippo*, 443 U.S. at 37-38.

2. **Common law tort claims: battery, false imprisonment**

Finally, Schneider brings common law tort claims against Gavrilos, arising from the same facts as his Fourth Amendment unlawful arrest claim. First, Schneider claims that Gavrilos battered him when he arrested him, because he did not have legal authority to make the arrest. Schneider's battery claim is dependent on the arrest being unlawful: law enforcement officers have the authority to use reasonable force when effecting a constitutional arrest. *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). Schneider does not contend that Gavrilos used excessive force. Because Gavrilos had probable cause to make the arrest, the battery claim necessarily fails. Second, Schneider claims that Gavrilos falsely imprisoned him when he arrested him. "False imprisonment is the unlawful restraint by one person of the physical liberty of another person." Wis. Jury Instructions—Civil, § 2100 False Imprisonment (2014). Again, like Schneider's battery claim, this claim necessarily fails because Gavrilos had probable cause to arrest Schneider.

## C. Discovery motion

Finally, a discovery motion remains outstanding. Dkt. 57. Schneider contends that the Town defendants' responses to several requests for admission are deficient. The court will deny the motion as moot. Schneider did not file the motion until after he moved for summary judgment (without adducing any evidence), and he does not explain how the discovery would have been relevant at summary judgment or how it may still be relevant to the one remaining First Amendment issue.

Even if the motion were not moot, it is borderline frivolous. With two exceptions, the Town defendants admitted or denied each of Schneider's RFAs. Even when the Town defendants objected to an RFA as seeking a legal conclusion—which many do—they still admitted or denied the request. The Town defendants did not admit or deny three requests—4, 29, and 35—because they did not have sufficient information; this is a reasonable response to those RFAs, and the court has no reason to think that the responses were not made in good faith.

The bottom line is that Schneider does not like the fact that the Town defendants denied many of his RFAs, and he complains that they have not adduced any evidence to support the denials. The parties have a responsibility to adduce evidence at summary judgment, but not in response to requests for admission. Schneider could have raised his evidentiary concerns at summary judgment, if they mattered. At this point, there is no basis to award any relief to Schneider because of defendants' discovery responses.

CONCLUSION

The court will grant summary judgment in favor of defendants on Schneider's Fourth Amendment claim, Fifth Amendment claim, Fourteenth Amendment due process claim, Fourteenth Amendment equal protection claim, § 1985(3) conspiracy claim, § 1986 failure to protect claim, *Monell* claim against La Crosse County, First Amendment claim against Gavrilos (qualified immunity), ADA/RA claim, claim under Article I, § 11 of the Wisconsin Constitution, and common law tort claims. The only claims that remain for resolution are Schneider's First Amendment claim against the Town regarding the constitutionality of the ordinance and the corresponding Wisconsin Constitution claims against the Town. The court will deny the parties' cross-motions for summary judgment on these issues without prejudice.

The court will stay this case and strike the remainder of the schedule pending the Seventh Circuit's forthcoming decision in *Luce*. Once the Seventh Circuit has issued its ruling, the court will take up Schneider's remaining claims. The court will give the parties instructions at that time regarding whether and to what extent the parties may renew their motions for summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Frederick P. Schneider's motion for summary judgment, Dkt. 52, is DENIED in its entirety, but plaintiff's motion for summary judgment on his First Amendment claim against defendant the Town of Campbell and his corresponding Wisconsin Constitution counterpart claims are DENIED without prejudice.

2. Defendants La Crosse County, Michael Valencia, and Jordan Schaller's motion for summary judgment, Dkt. 69, is GRANTED in its entirety. The County defendants are DISMISSED from this case.

3. Defendants the Town of Campbell, Andrew J. Gavrilos, and Adam Breidel's motion for summary judgment, Dkt. 79, is GRANTED in part and DENIED in part without prejudice. As set forth herein, plaintiff's First Amendment claim against the Town and his corresponding Wisconsin Constitution counterpart claims remain for resolution. Gavrilos is DISMISSED from this case.

4. Schneider's discovery motion, Dkt. 57, is DENIED as moot.

5. The court will STAY this case pending the Seventh Circuit's ruling in *Luce v. Town of Campbell*, No. 15-2627 (7th Cir. filed July 31, 2015). The court will strike the remainder of the schedule.

6. The parties should notify the court promptly when the Seventh Circuit issues its decision in *Luce*. At that time, the court will lift the stay and consider inviting new motions for summary judgment on plaintiff's remaining claims, in light of the Seventh Circuit decision.

Entered March 15, 2017.

                BY THE COURT:

                /s/

                _____
                JAMES D. PETERSON
                District Judge